TUCKER ELLIS LLP
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorneys for Plaintiff
CHRIS PRINCIPE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS PRINCIPE, | Case No. 8:17-cv-00608 |
| Plaintiff, | **COMPLAINT FOR DEFAMATION, AND INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS; DEMAND FOR TRIAL BY JURY** |
| v. | |
| TIMOTHY GLEN CURRY A/K/A TIMOTHY TAYSHUN, | |
| Defendant. | |

Plaintiff, Chris Principe ("Plaintiff"), by and through his attorneys, Tucker Ellis, LLP, files his complaint against Timothy Glen Curry aka Timothy Tayshun ("Defendant") for injunctive relief and damages as follows:

## THE PARTIES

1. Plaintiff Chris Principe is an individual residing in Florida.

2. Plaintiff is informed and believes, and on that basis alleges, that Defendant Timothy Glen Curry aka Timothy Tayshun is an individual residing in California.

## JURISDICTION AND VENUE

3. Plaintiff is a citizen of the State of Florida and Defendant is a citizen of the State of California. The matter in controversy exceeds the sum of $75,000 exclusive of interest and costs. As such, this Court has original jurisdiction of this civil action pursuant to 28 U.S.C. § 1332.

4. This Court has supplemental jurisdiction over the claims in this Complaint that arise under state statutory and common law of the State of California pursuant to 28 U.S.C. § 1367, because the state law claims are so related to the claims in which this Court has original jurisdiction that they form part of the same case or controversy and derive from a common nucleus of operative facts.

5. This Court has personal jurisdiction Defendant because Defendant resides and is domiciled within the Central District of California.

6. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b).

## PLAINTIFF'S BUSINESS AND REPUTATION

7. Plaintiff is a consultant in transaction banking, finance and technology. Plaintiff's career as a consultant also focuses on global trade using cryptocurrency and blockchain.

8. Cryptocurrency, like BitCoin, is a digital currency in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank.

9. Blockchain is a digital ledger in which transactions made in cryptocurrency are recorded chronologically and publicly.

10. In furtherance of his consulting business, Plaintiff has given numerous speeches and presentations, as well as trainings and workshops, throughout the world.

11. Plaintiff has written over thirty published articles in the transaction banking, finance and technology arena.

12. Plaintiff is the official Trade Finance Trainer for the certificate program of Florida International University and Florida International Banking Association (FIBA) since 2012.

13. Plaintiff was Chairman of the Banker's Association for Finance and Trade (BAFTA) and the International Financial Services Association (IFSA) National Trade Services Product Management Committee from January 2009 to December 2013. Plaintiff was the first non-banker voted as the Chairman of this committee.

14. Plaintiff was also the Founding Chairman of the IFSA Financial Supply Chain Committee in February 2008.

15. Furthermore, Plaintiff is an owner and publisher of Financial IT, an online and print resource for Financial Technology market analysis.

16. Plaintiff has enjoyed a good reputation both generally and in his occupation.

17. Plaintiff's clients have highly recommended him to others and have referred to him as, among other things, "a real expert in trade finance and supply chain," "one of the most visionary Trade Finance and Financial Supply Chain executives in the space," and "a diligent and highly experienced worker."

## DEFENDANT'S BUSINESS

18. Defendant is the President and co-founder of ezCoinAccess, which seeks to make BitCoin accessible and available to everyone throughout the world.

19. Plaintiff is informed and believes, and on that basis alleges, that Defendant operates BitCoin kiosks, which act like cryptocurrency ATMs, in furtherance of his investment in the BitCoin cryptocurrency.

20. Plaintiff is informed and believes, and on that basis alleges, that Defendant supports BitCoin by, among other things, attacking competitors of BitCoin, like OneCoin, over the Internet and on social media.

21. Plaintiff is informed and believes, and on that basis alleges, that Defendant uses the Twitter handle @*ezCoinAccess*.

22. Plaintiff is informed and believes, and on that basis alleges, that Defendant frequently comments on the BehindMLM blog posts found at *behindmlm.com.*

23. BehindMLM is a blog or review site on the Internet dedicated to being a resource to people curious about the multi-level marketing (i.e. MLM) industry and the companies that exist within it.

**FACTUAL BASES FOR COMPLAINT**

24. In February 2016, Financial IT featured a photograph of Ruja Ignatova on its cover and an article about OneCoin, a cryptocurrency promoted by Ms. Ignatova and her company, Onecoin Ltd. and which is a competitor to BitCoin.

25. Neither Ms. Ignatova nor OneCoin Ltd. paid Plaintiff or Financial IT for that cover and article.

26. Plaintiff also gave a speech in June 2016 about the uses and benefits of cryptocurrencies in global trade at an event hosted by OneCoin Ltd. in London, England.

27. Plaintiff was not paid for that speech by Ms. Ignatova or OneCoin Ltd.

28. Neither Ms. Ignatova nor OneCoin Ltd. has ever paid Plaintiff or Financial IT for any publication, speech or support.

29. Plaintiff is not an employee of OneCoin Ltd. Nor is Plaintiff a paid sponsor or representative of OneCoin Ltd.

30. Defendant consistently refers to OneCoin as a Ponzi scheme and a criminal enterprise in his Tweets and posts on the Internet.

31. In many of Defendant's Tweets and posts, Defendant has falsely claimed, and without any evidence, that Plaintiff has engaged in criminal activity by being paid by, and working to support, OneCoin Ltd.

32. Defendant also seeks to destroy Plaintiff's consulting business and publishing business because he sends Tweets to Plaintiff's Twitter handle @cmpleo and Financial IT's Twitter handle @financialit_net to ensure that followers of Plaintiff and Financial IT's Twitter feeds would see Defendant's false and defamatory Tweets.

33. Defendant has also used a series of hashtags in his Tweets to further more broadly disseminate his false statements. For instance, Defendant uses hashtags such as "#onecoin" and "#ponzi" to tie Defendant's defamatory Tweets to other Tweets using the same hashtags.

34. Defendant has Tweeted: "@cmpleo . . . @financialit_net . . . Chris Principe pimps #ponzi#Onecoin."

4

35. Defendant has Tweeted: "@cmpleo . . . @financialit_net Chris Principe is a PAID SHILL for #Onecoin #ponzischeme."

36. Defendant has Tweeted: "@cmpleo . . . @financialit_net . . . WHY IS Chris Principe touring/shilling known #ponzischeme #Onecoin."

37. Defendant has Tweeted: "@cmpleo . . . @financialit_net Chris Principe on #Onecoin #ponzi payroll #PaidShill."

38. On January 28, 2017, Defendant Tweeted: ". . . @cmpleo @financilit_net . . . The Publisher, Chris Principe @cmpleo is on #Onecoin #ponzi payroll!"

39. On January 29, 2017, Defendant Tweeted: "@cmpleo . . . WHY IS Chris Principe PROMOTING A KNOWN #PONZI #Onecoin.

40. On January 29, 2017, Defendant also Tweeted: ". . . @cmpleo . . . WHY Is Chris Principe promoting a KNOWN and INFAMOUS #ponzischeme?"

41. On October 22, 2016, on the BehindMLM website at http://behindmlm.com/companies/onecoin/onecoin-payment-delays-triggered-by-hong-kong-account-closure/ there appeared a blog entry entitled "OneCoin payment delays triggered by Hong Kong account closure." On November 2, 2016 at 5:20 a.m., Defendant wrote the 53rd comment to that blog entry that includes the following statement: "Despite **Chris Principe being on OneCoin payroll** . . ." (Emphasis added).

42. On November 15, 2016, on the BehindMLM website at http://behindmlm.com/companies/onecoin/onecoin-lose-last-bank-account-unable-to-accept-wires/ there appeared a blog entry entitled "OneCoin lose last bank account, unable to accept wires." On November 15, 2016 at 9:31 a.m., Defendant wrote the 2nd comment to that blog entry that includes the following statement: "Obviously, Chris Principe is a similar reptile. **I hope someone will come out with evidence and proof as to the level of his financial wind fall for helping commit crime, as well**. I'm fairly sure that Financial IT and any of Principe's future endeavors will be well received once this begins more rapidly unfolding, unless it is **a biography about his criminal involvement written behind cell walls**." (Emphasis added).

5

43. On November 19, 2016, on the BehindMLM website at http://behindmlm.com/companies/onecoin/onecoins-china-unionpay-cards-disabled-public-exchange-denied/ there appeared a blog entry entitled "OneCoin's China UnionPay cards disabled, public exchange denied." On November 20, 2016 at 3:03 a.m., Defendant wrote the 24th comment to that blog entry that includes the following statement: "Chris Principe ala 'Financial IT' connections are the only MSB (Money Services Business) connections left. And they may be pretty vast. **Probably why he was bribed handsomely to join.** But it's gotta make you wonder. **If Principe IS actually willfully facilitating perpetuation of fraud like this through his questionable banking networks . . . it's as if he's shooting for additional months in prison with every throw**." (Emphasis added).

44. In June 2016, Plaintiff first met with members of the management team of Skyway Capital ("Skyway") who were interested in the combination of a future mode of transportation with financing through crowd funding.

45. In September 2016, Skyway asked Plaintiff if he would be interviewed for Belarus television about his opinions of Skyway and what he thought Skyway's impact would be on the future of transportation. Plaintiff was not paid for this interview.

46. Plaintiff and Skyway entered into a representative's agreement in September 2016. Pursuant to this agreement, Plaintiff would provide Skyway with access to Plaintiff's network of contacts in banking, government and industry.

47. Pursuant to this agreement, Plaintiff would receive compensation based on a commission schedule if one of Plaintiff's introductions resulted in an executed sale for Skyway. Plaintiff's expenses in making the contacts and introductions would be borne by Plaintiff.

48. Pursuant to that agreement, Plaintiff travelled throughout the world in holding face to face meetings with potential targeted investors. Plaintiff facilitated many meetings between these prospective investors and Skyway.

49.  Due to Skyway's relationship with Plaintiff, Skyway was also identified as a Ponzi scheme by BehindMLM and Defendant. Skyway did not want to be associated with Plaintiff because of the adverse effect it would have on Skyway's business, reputation and ability to find investors.

50.  In 2017, Skyway canceled its agreement with Plaintiff because Skyway found statements by Defendant on the Internet linking Plaintiff directly as a promoter of a Ponzi scheme and Plaintiff did not want to be associated with Plaintiff.

51.  As a result of Defendant's defamatory statements, Plaintiff has been forced to protect his reputation and prevent Defendant from making intentionally false statements which have adversely affected Plaintiff's business.

## First Cause of Action

### (Defamation)

52.  Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraph 1 through 51 of this Complaint as though fully set forth.

53.  Defendant's statements were published on the Internet and on Twitter and seen and read by persons other than Plaintiff. Defendant's statement have been seen and read by persons who follow the BehindMLM blog, who follow the Tweets of Plaintiff, who follow the Tweets of Financial IT, who follow the Tweets of Defendant, and who search any of the hashtags used in Defendant's Tweets or who use those hashtags to follow Tweets related to them.

54.  Defendant's statements are false and unprivileged because Plaintiff has not been "bribed" by OneCoin Ltd.

55.  Defendant's statements are false and unprivileged because Plaintiff was not on OneCoin Ltd.'s "payroll."

56.  Defendant's statements are false and unprivileged because Plaintiff has never been paid by OneCoin Ltd. or Ms. Ignatova or received any "financial wind fall."

57. Defendant's statements are false and unprivileged because Plaintiff has not helped OneCoin Ltd. commit a crime, or done anything illegal involving OneCoin or engaged in any criminal activity relating to OneCoin.

58. Defendant knew that these statements were false.

59. Defendant's statements expose Plaintiff to hatred, contempt, ridicule or obloquy because they challenge his business ethics, accuse him of a crime, and falsely claim he is associated or affiliated with a criminal enterprise.

60. Defendant's statements cause Plaintiff to be shunned or avoided, and which have a tendency to injure him in his occupation, because they challenge his business ethics, accuse him of a crime, and falsely claim he is associated or affiliated with a criminal enterprise.

61. Defendant's statements are defamatory *per se* because they charge Plaintiff with committing a crime.

62. Defendant's statements are defamatory *per se* because they tend directly to injure Plaintiff in respect to his profession, trade or business by imputing to him general disqualification in those respects which his occupation peculiarly requires.

63. Defendant's statements are defamatory *per se* because they tend directly to injure Plaintiff by imputing something with reference to his profession or business that has a natural tendency to lessen its profits.

64. As a proximate result of these statements, Plaintiff has been damaged because Plaintiff has suffered the loss of his reputation, loss of business and loss of income in excess of $75,000. Defendant's statements had the effect of discouraging businesses from dealing with Plaintiff, by lowering the reputation of Plaintiff, and deterring other businesses from dealing with him.

65. As a proximate result of these statements, Plaintiff has been damaged because Plaintiff has been forced to pay an outside consultant to help repair the damage to Plaintiff's reputation.

66. Defendant made these statements intentionally, with malice and without any evidence to support them. As such, Plaintiff is entitled to exemplary damages.

67. Defendant's statements have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and his business reputation.

68. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief.

## Second Cause of Action

(Tortious Interference With Contractual Relations)

69. Plaintiff realleges and incorporates by reference each of the allegations contained in Paragraph 1 through 68 of this Complaint as though fully set forth.

70. Defendant knew or should have known that his false and defamatory statements would reach current or prospective clients of Plaintiff because Defendant used Plaintiff's Twitter handle @cmpleo and Financial IT's Twitter handle @financialit_net on most of Defendant's false and defamatory Tweets.

71. Defendant knew or should have known of the relationship between Plaintiff and Skyway when he made the false and defamatory statements because Defendant commented on the blog entry at the BehindMLM website entitled "OneCoin's Chris Principe also promoting Skyway Capital Ponzi scheme."

72. Defendant's statements have induced or will induce Plaintiff's clients, like Skyway, to breach their agreements with Plaintiff.

73. Defendant's statements have induced or will induce Plaintiff's prospective clients not to enter into any agreements with Plaintiff.

74. As a proximate result of these statements, Plaintiff has been damaged because Plaintiff lost clients, business, potential clients and income in excess of $75,000. Defendant's statements had the effect of discouraging businesses from dealing with

9

Plaintiff, by lowering the reputation of Plaintiff, and deterring other businesses from dealing with him.

75. Defendant made these statements intentionally, with malice and with the intent to interfere with and disrupt the contractual relationships between Plaintiff and his clients. As such, Plaintiff is entitled to exemplary damages.

76. Defendant's statements have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiff and his contractual relationships with his clients and prospective clients.

77. By reason of Defendant's acts, Plaintiff's remedy at law is not adequate to compensate for the injuries inflicted by Defendant. Accordingly, Plaintiff is entitled to entry of a temporary restraining order against Defendant and preliminary and permanent injunctive relief.

**Prayer for Relief**

**Therefore**, Plaintiff respectfully requests judgment as follows:

1. That the Court enter a judgment against Defendant that:
   (a) Defendant's statements are defamatory;
   (b) Defendant's statements are defamatory *per se*;
   (c) Defendant intentionally interfered with Plaintiff's contractual relationships; and
   (d) Defendant intentionally interfered with Plaintiff's prospective economic relationships..

2. That each of the above acts were willful.

3. That the Court issue a Temporary Restraining Order and Preliminary Injunction enjoining and restraining Defendant and its respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from making false and defamatory statements about Plaintiff.

4. That Plaintiff be awarded damages for Defendant's defamation.

10

5. That Plaintiff be awarded damages for Defendant's interference with Plaintiff's contractual relations.

6. That Plaintiff be awarded exemplary or punitive damages in an amount appropriate to punish Defendant and to make an example of Defendant to the community.

7. That the Court issue a Permanent Injunction enjoining and restraining Defendant and his respective agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from making false and defamatory statements regarding Plaintiff.

8. That the Court award Plaintiff his costs of suit incurred herein.

9. That Plaintiff be awarded such other relief as may be appropriate, including costs of corrective advertising

DATED: April 4, 2017                         Tucker Ellis LLP


                                             By:   /s/Howard A. Kroll
                                                   Howard A. Kroll
                                                   Attorneys for Plaintiff
                                                   CHRIS PRINCIPE

**DEMAND FOR TRIAL BY JURY**

Plaintiff Chris Principe hereby demands a trial by jury to decide all issues so triable in this case.

DATED: April 4, 2017                Tucker Ellis LLP

                                    By:   /s/Howard A. Kroll
                                          Howard A. Kroll
                                          Attorneys for Plaintiff
                                          CHRIS PRINCIPE

1240623.3