TUCKER ELLIS LLP
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen – SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:  213.430.3400
Facsimile:  213.430.3409

Attorneys for Plaintiff
CHRIS PRINCIPE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS PRINCIPE,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>TIMOTHY GLEN CURRY A/K/A TIMOTHY TAYSHUN,<br><br>　　　　　Defendant. | Case No. 8:17-cv-00608 JLS (KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT MOTION FOR PRELIMINARY INJUNCTION ORDER AGAINST HARASSMENT**<br><br>DATE:　December 1, 2017<br>TIME:　2:30 p.m.<br>CTRM:　10A<br><br>Hon. Josephine L. Staton |

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................1

II. STATEMENT OF FACTS ..................................................................................1

    A. Defendant's conduct predicating this suit was already harassing. ......................................................................................................1

    B. Once this action commenced, Defendant redoubled his efforts to harass Plaintiff on social media. ...............................................................5

    C. Defendant has upped the ante significantly and is barraging Plaintiff with private messages directly to his phone at inappropriate hours. ..........................................................................................7

III. AN INJUNCTION IN THE FORM OF A RESTRAINING ORDER AGAINST HARASSMENT IS NECESSARY AND APPROPRIATE. ....................................................................................................7

    A. All of the requirements for a restraining order against harassment have been met. .......................................................................8

        1. Defendant is engaged in a course of conduct directed at Plaintiff. ..................................................................................................9

        2. Defendant's conduct has seriously alarmed, annoyed, and harassed Plaintiff such that it would cause a reasonable person to suffer substantial emotional distress and did in fact actually caused Plaintiff emotional distress. ...................................................................10

        3. Defendant's acts are not constitutionally protected. .....................11

        4. Defendant will continue his harassing conduct absent an injunction. ............................................................................................12

    B. Plaintiff will suffer irreparable harm if an injunction is not issued. ................................................................................................12

    C. The balance of equities favors Plaintiff. ..................................................13

    D. The public interest favors an injunction. .................................................13

IV. CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Alliance for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) .................................................................................. 7

*Balboa Island Village Inn, Inc. v. Lemen*,
  40 Cal. 4th 1141 (2007) ........................................................................................... 11

*Brekke v. Wills*,
  125 Cal.App.4th 1400 (2005) ............................................................... 8, 10, 11, 13

*Denney v. DEA*,
  508 F. Supp. 815 (E.D. Cal. 2007) ........................................................................ 12

*Dun & Bradstreet v. Greenmoss Builders*,
  472 U.S. 749 (1985) ............................................................................................... 11

*Ensworth v. Mullvain*,
  224 Cal.App.3d 1105 (1990) ................................................................................. 10

*Fletcher v. W. Nat. Life Ins. Co.*,
  10 Cal.App.3d 376 (1970) ..................................................................................... 10

*Harris v. Stampolis*,
  248 Cal.App.4th 484 (2016) .................................................................................. 10

*Herb Reed Enterprises v. Florida Entment. Mgmt.*,
  736 F. 3d 1239 (9th Cir. 2013) ............................................................................... 7

*Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*,
  129 Cal.App.4th 1228 (2005) ................................................................................ 11

*Nora v. Kaddo*,
  116 Cal.App.4th 1026 (2004) .................................................................................. 8

*Parisi v. Mazzaferro*,
  5 Cal.App.5th 1219 (2016) .......................................................................... 9, 11, 12

*R.D. v. P.M.*
  (2011) 202 Cal.App.4th 181 .................................................................................. 12

*Schild v. Rubin*,
  232 Cal.App.3d 755 (1991) ................................................................................ 8, 9

*Schraer v. Berkely Property Owners' Assn.*,
  207 Cal.App.3d 719 (1989) ..................................................................................... 8

*Sullivan v. Cohen*,
  No. B272111, 2017 WL 4296586 (Cal. Ct. App. Sept. 28, 2017) .................................12

*Thing v. La Chusa*,
  48 Cal.3d 644 (1989) ............................................................................................9, 10

*Winter v. Natural Resources Defense Council*,
  555 U.S. 7, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008) ........................................................7

**Statutes**

Cal. Civ. Proc. Code § 527.6 ....................................................................................12
Cal. Civ. Proc. Code § 527.6(b)(1) ...........................................................................11
Cal. Civ. Proc. Code § 527.6(b)(3) .............................................................................9
Cal. Civ. Proc. Code. § 527.6(d) ................................................................................8

## I. INTRODUCTION

Injunctive relief is required to cease ongoing harassment from Defendant, which is causing Plaintiff significant emotional distress. Defendant has been continuously and systematically harassing Plaintiff over the Internet, both by threatening him and accusing him of criminal activity in the foulest, most vitriolic language possible. Even before this lawsuit began, Plaintiff had lost business opportunities because of Defendant's conduct. Once litigation commenced, however, Defendant significantly upped the ante, barraging Plaintiff numerous times per day with vile and outrageous messages on social media and via the phone messenger application WhatsApp, all of which have caused Plaintiff severe emotional distress.

Defendant's actions are nothing short of grossly inappropriate. Plaintiff therefore respectfully requests that the Court enter an order for a five-year injunction barring harassment.[1]

## II. STATEMENT OF FACTS

### A. Defendant's conduct predicating this suit was already harassing.

Plaintiff is a consultant in transaction banking, finance and technology. Plaintiff's career as a consultant also focuses on global trade using cryptocurrency and blockchain. Cryptocurrencies, such as BitCoin, are digital currencies in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. Blockchain is a digital ledger in which transactions made in cryptocurrency are recorded chronologically and publicly. Declaration of Chris Principe ("Principe Decl") ¶ 2.

In furtherance of his consulting business, Plaintiff has given numerous speeches and presentations, as well as trainings and workshops, throughout the world. Plaintiff has written over thirty published articles in the transaction banking, finance and technology arena. Plaintiff is the official Trade Finance Trainer for the certificate program of Florida

---

[1] Five years is the maximum permissible duration for an anti-harassment injunction before it must be renewed. Cal. Civ. Proc. Code § 527.6(j)(1).

1

International University and Florida International Banking Association (FIBA) since 2012. Principe Decl. ¶ 3.

Plaintiff was Chairman of the Banker's Association for Finance and Trade (BAFTA) and the International Financial Services Association (IFSA) National Trade Services Product Management Committee from January 2009 to December 2013. Plaintiff was the first non-banker voted as the Chairman of this committee. Plaintiff was also the Founding Chairman of the IFSA Financial Supply Chain Committee in February 2008. Further, Plaintiff is an owner and publisher of Financial IT, an online and print resource for Financial Technology market analysis. Principe Decl. ¶ 4.

Plaintiff has enjoyed a good reputation both generally and in his occupation. Plaintiff's clients have highly recommended him to others and have referred to him as, among other things, "a real expert in trade finance and supply chain," "one of the most visionary Trade Finance and Financial Supply Chain executives in the space," and "a diligent and highly experienced worker." Principe Decl. ¶ 5.

Defendant is the President and co-founder of the now defunct ezCoinAccess, which seeks to make BitCoin accessible and available to everyone throughout the world. Defendant claims to operate BitCoin kiosks, which act like cryptocurrency ATMs, in furtherance of his investment in the BitCoin cryptocurrency. Defendant supports BitCoin by, among other things, attacking competitors of BitCoin, like OneCoin, over the Internet and on social media. Defendant uses the Twitter handle @ezCoinAccess to make such attacks. Defendant also frequently comments on the BehindMLM[2] blog posts accessible at behindmlm.com, where he also makes these attacks. Principe Decl. ¶ 6.

In February 2016, Financial IT featured a photograph of Ruja Ignatova on its cover and in an article about OneCoin, a cryptocurrency promoted by Ms. Ignatova and her company, Onecoin Ltd., and which is a competitor to BitCoin. Neither Ms. Ignatova nor OneCoin Ltd. paid Plaintiff or Financial IT for that cover and article. Plaintiff also gave a

---

[2] BehindMLM is a blog or review site on the Internet dedicated to being a resource to people curious about the multi-level marketing (i.e. MLM) industry and the companies that exist within it. Principe Decl. ¶ 7

speech in June 2016 about the uses and benefits of cryptocurrencies in global trade at an event hosted by OneCoin Ltd. in London, England. Plaintiff was not paid for that speech by Ms. Ignatova or OneCoin Ltd. In fact, neither Ms. Ignatova nor OneCoin Ltd. has ever paid Plaintiff or Financial IT for any publication, speech, or support, nor is Plaintiff an employee of OneCoin Ltd. or a paid sponsor or representative of OneCoin Ltd. Principe Decl. ¶ 8.

Defendant consistently refers to OneCoin as a Ponzi scheme and a criminal enterprise in his Tweets and posts on the Internet. Defendant has done so daily or near-daily and at a high volume. In many of Defendant's Tweets and posts, Defendant has falsely claimed, and without any evidence, that Plaintiff has engaged in criminal activity by being paid by, and working to support, OneCoin Ltd. Defendant has sought to destroy Plaintiff's consulting business and publishing business by sending Tweets to Plaintiff's Twitter handle @cmpleo and Financial IT's Twitter handle @financialit_net to ensure that followers of Plaintiff and Financial IT's Twitter feeds would see Defendant's false and defamatory Tweets. Defendant has also used a series of hashtags in his Tweets to further more broadly disseminate his false statements. For instance, Defendant uses hashtags such as "#onecoin" and "#ponzi" to tie Defendant's defamatory Tweets to other Tweets using the same hashtags. Principe Decl. ¶¶ 8-10.

Examples of Defendant's Tweets predicating this action include:

- "@cmpleo . . . @financialit_net . . . Chris Principe pimps #ponzi#Onecoin.";
- "@cmpleo . . . @financialit_net Chris Principe is a PAID SHILL for #Onecoin #ponzischeme.";
- "@cmpleo . . . @financialit_net . . . WHY IS Chris Principe touring/shilling known #ponzischeme #Onecoin.";
- "@cmpleo . . . @financialit_net Chris Principe on #Onecoin #ponzi payroll #PaidShill.";
- ". . . @cmpleo @financilit_net . . . The Publisher, Chris Principe @cmpleo is on #Onecoin #ponzi payroll!";

3

- "@cmpleo . . . WHY IS Chris Principe PROMOTING A KNOWN #PONZI #Onecoin."; and
- ". . . @cmpleo . . . WHY Is Chris Principe promoting a KNOWN and INFAMOUS #ponzischeme?"

Principe Decl. ¶12 & Ex. 2; Cmplt ¶¶ 33-40. Many of these Tweets were posted within days of each other or even on the same day. Principe Decl. ¶ 11.

At least one of Plaintiff's business deals has been destroyed as a result of this activity. In June 2016, Plaintiff first met with members of the management team of Skyway Capital ("Skyway") who were interested in the combination of a future mode of transportation with financing through crowd funding. In September 2016, Skyway asked Plaintiff if he would be interviewed for Belarus television about his opinions of Skyway and what he thought Skyway's impact would be on the future of transportation. Plaintiff was not paid for this interview. Plaintiff and Skyway entered into a representative's agreement in September 2016. Pursuant to this agreement, Plaintiff would provide Skyway with access to Plaintiff's network of contacts in banking, government and industry. Principe Decl. ¶ 13.

Due to Skyway's relationship with Plaintiff, Skyway was also identified as a Ponzi scheme by BehindMLM and Defendant. Skyway did not want to be associated with Plaintiff because of the adverse effect it would have on Skyway's business, reputation, and ability to find investors. Skyway canceled its agreement with Plaintiff in 2017 because Skyway found statements by Defendant on the Internet linking Plaintiff directly as a promoter of a Ponzi scheme and Skyway did not want to be associated with Plaintiff. Principe Decl. ¶ 14.

The financial industry in which Plaintiff operates is risk adverse, and Plaintiff has lost this and other business opportunities as a result of Defendant's harassing conduct. As a result, in addition to the inherently harassing nature of Defendant's activity, Plaintiff's ability to earn a living is being damaged by the harassment. This impairment to his ability to earn a living is further compounding his emotional distress. Principe Decl. ¶ 15.

The activity predicating this lawsuit in itself constitutes harassment; however, since this action commenced, Defendant has redoubled his efforts to humiliate and harass Plaintiff.

**B.      Once this action commenced, Defendant redoubled his efforts to harass Plaintiff on social media.**

After this action commenced, Defendant sent Plaintiff a request to connect with him on the social networking site LinkedIn. The request was accompanied by a message: "I'm going to help put you in jail . . . In my opinion, you are a STUPID MOTHERF****R for f***ing with me, you piece of sh**. [W]ait for it!"[3] Plaintiff has declined or ignored these requests. However, whenever Plaintiff declines them, Defendant sends another request with another harassing message. Similarly, when Plaintiff ignores them, they expire after thirty days, at which point, Defendant sends a new one. Principe Decl. ¶ 16 & Ex. 1.

In addition to sending messages on LinkedIn, Defendant has been tagging Plaintiff in a barrage of harassing Tweets. For instance, on September 8, 2017, Defendant sent Plaintiff Tweets at 4:05 a.m., 4:07 a.m., 4:10 a.m., and 5:29 a.m., to name a few. On September 18, 2017, Defendant sent Tweets at least at 2:27 a.m., 9:02 a.m., 9:12 a.m., 9:16 a.m., 9:22 a.m., and 9:43 a.m. On September 19, 2017, Defendant again unleashed a series of Tweets, and on September 20, 2017, Defendant Tweeted at Plaintiff at least at 7:09 p.m., 7:29 p.m., and 7:35 p.m. Many of these Tweets also copied the Securities and Exchange Commission and the Federal Bureau of Investigation and include:

- "U attack ME for EXPOSING UR ASS??? I won't stop EXPOSING YOUR ASS until UR in JAIL";
- "Tell your attorney, Howard Kroll, I'm calling you an accomplice to PONZI, ON THE RECORD!";

---

[3] Plaintiff has partially redacted the expletives in his papers, including in certain case quotations, so as not to offend the Court. Plaintiff will submit non-redacted copies for in-camera inspection if the Court would find it helpful.

- "FEDS! Follow ALL DRAMA by searching 'Chris Principe' on this site [website]";
- "HEY FEDS!!! FOLLOW THE WIRE FRAUD AND MONEY LAUNDERING TRAIL!";
- "U guys must already have SEVERAL of these intl economic criminal in your Watch list.";
- "FOLLOW THIS THREAD TO FIND ECONOMIC CRIME. PLEASE TAKE ACTION.";
- "That's correct I have dates n which Principe met w/ OTHER OC scammers to fund his case";
- "Chris Principe appears 2B a serial scam opportunist who'll enable Money Laundering opportunities to infamous criminals";
- "You're going down too, scammer. Enjoy while you can.";
- "I WILL B TESTIFYING AGAINST U N FEDERAL COURT WHEREIN U R THE DEFENDANT & THE SEC IS THE PLAINTIFF U A**HOLE! WASTE MY TIME!? F-YOU!";
- "Better seek a new career, because this industry DOESN'T WANT YOU SCAMMERS!"; and
- "Scammers get kicked out of 'blockchain events.' Sorry Chris Principe, you scamming pieced shit! Someone figured you out!"

Principe Decl. ¶¶ 17-18 & Ex. 2. These are but examples of the near-daily barrage of messages, which are taking up a significant amount of Plaintiff's time to sort through to reach legitimate messages. Plaintiff has been using Twitter since 2009 and therefore enjoys a wide following. As a result, Defendant's harassing messages are being disseminated to a broad audience. Defendant has also begun posting images of Plaintiff and bragging about how Plaintiff has been un-invited from events due to Defendant's comments and postings. In addition to the emotional distress caused by the original postings and the loss of these engagements, Plaintiff is experiencing additional emotional

distress as a result of Defendant's subsequent posting bragging about these results. Principe Decl. ¶¶ 19-21.

### C. Defendant has upped the ante significantly and is barraging Plaintiff with private messages directly to his phone at inappropriate hours.

As if the above harassment were not enough, Defendant has begun using the mobile phone messenger application WhatsApp to broaden his efforts to bombard Plaintiff with harassing messages on his mobile phone. As an example, Defendant has added Plaintiff to a group chat message titled "OneCoin Victim Support." Defendant is barraging Plaintiff with messages at all hours, including the early morning and the middle of the night and is encouraging the 160 other people he has added to the group chat to do so as well. These messages contain the same type of untruthful and vile allegations and comments contained above. Principe Decl. ¶ 22 & Ex. 3.

This constant barrage of harassment on multiple fronts would cause any reasonable person significant emotional distress, and is causing Plaintiff severe emotional distress. An order against such harassment is therefore warranted.

## III. AN INJUNCTION IN THE FORM OF A RESTRAINING ORDER AGAINST HARASSMENT IS NECESSARY AND APPROPRIATE.

In the Ninth Circuit, a moving party is entitled a preliminary injunction if (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest.[4] *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 22, 129 S.Ct. 365, 172 L.Ed.2d 249 (2008); *Herb Reed Enterprises v. Florida Entment. Mgmt.*, 736 F. 3d 1239, 1247 (9th Cir. 2013). Because an injunction is an equitable remedy, the court may apply a sliding test, under which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a

---

[4] A civil restraining order against harassment is a state law remedy based on specific requirements, but to avoid any substantive state law versus federal procedure concerns, Plaintiff argues the *Winter* factors for an injunction, each of which favors him regardless.

7

Case 8:17-cv-00608-JLS-KES   Document 28   Filed 10/20/17   Page 12 of 18   Page ID #:128

weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

### A. All of the requirements for a restraining order against harassment have been met.

Section 527.6 of the California Civil Procedure Code permits a person who has suffered harassment to seek injunctive relief. *Nora v. Kaddo*, 116 Cal.App.4th 1026, 1028 (2004). "Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' It does so by providing expedited injunctive relief to victims of harassment." *Brekke v. Wills*, 125 Cal.App.4th 1400, 1412 (2005) (citations omitted). When a party seeks such an injunction, the court must hold a hearing, receive relevant testimony, and issue the injunction if it finds, by clear and convincing evidence, that harassment exists. Cal. Civ. Proc. Code. § 527.6(d). Any willful disobedience of such an injunction is punishable as a misdemeanor. *Id.* at § 527.6(d), (h), (i). The Court may, however, issue a temporary restraining order until a hearing on the injunction may be held. *Id.* at § 527.6(c). The initial temporary restraining order issued on an ex parte basis may be based solely on affidavits. *Id.*; *Schraer v. Berkely Property Owners' Assn.*, 207 Cal.App.3d 719, 732 (1989).

"The elements of unlawful harassment, as defined by the language in section 527.6, are as follows: (1) 'a knowing and willful course of conduct' entailing a 'pattern' of 'a series of acts over a period of time, however short, evidencing a continuity of purpose'; (2) 'directed at a specific person'; (3) '[that] seriously alarms, annoys, or harasses the person'; (4) '[that] serves no legitimate purpose'; (5) [that] 'would cause a reasonable person to suffer substantial emotional distress' and 'actually cause[s] substantial emotional distress to the [the person to be protected by the order]'; and (6) which is not a '[c]onstitutionally protected activity.'" *Schild v. Rubin*, 232 Cal.App.3d 755, 762 (1991).

8

### 1. Defendant is engaged in a course of conduct directed at Plaintiff.

A "course of conduct" that seriously alarms, annoys, or harasses a person and serves no legitimate purpose is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose, including . . . sending harassing correspondence to an individual by any means, including, but not limited to, . . . computer e-mail." Cal. Civ. Proc. Code § 527.6(b)(3). California courts have held that as few as three "vile and vitriolic letters" combined with a phone call and another letter cause "no trouble [in] concluding a 'course of conduct" existed." *Brekke*, 125 Cal.App.4th at 1413-14.

Here, Defendant has been frequently and repeatedly sending and posting messages on Twitter wherein he is accusing Plaintiff of being an employee of OneCoin Ltd., which Defendant refers to as a Ponzi scheme and a criminal enterprise. By sending Tweets to Plaintiff's Twitter handle, Defendant is ensuring not only that Plaintiff receives them, but also that any of Plaintiff's followers on Twitter do as well. Defendant has also been copying numerous organizations, including the FBI and the SEC. These Tweets are expletive laden and contain unwarranted accusations and threats. Principe Decl. Ex. 2.

California courts have found exactly this kind of conduct to be harassing. *See, e.g.*, *Parisi v. Mazzaferro*, 5 Cal.App.5th 1219, 1223-24 (2016) (letters and other communications calling victim "scum of the earth filth who preys on the elderly" together with accusations of falsifying a trust and property deeds, embezzling federal housing funds, of facilitating annuity schemes, setting up false bank accounts, committing bankruptcy fraud, and making false police reports all found to be part of a harassing course of conduct). The public dissemination of such messages, even to those who might be responsible for investigating such accusations, can still also constitute a harassing course of conduct. *See id.* at 1224 (letter to employer demanding employee be fired for alleged illegal conduct found harassing).

9

### 2. Defendant's conduct has seriously alarmed, annoyed, and harassed Plaintiff such that it would cause a reasonable person to suffer substantial emotional distress and did in fact actually caused Plaintiff emotional distress.

Section 527.6 does not define the phrase "substantial emotional distress." "However, in the analogous context of the tort of intentional infliction of emotional distress, the similar phrase 'severe emotional distress' means highly unpleasant mental suffering or anguish 'from socially unacceptable conduct,'" the latter of which entails substantial and enduring (as opposed to trivial and transitory) emotional distress that "'no reasonable person in a civilized society should be expected to endure.'" *Schild*, 232 Cal.App.3d at 762 (quoting *Thing v. La Chusa*, 48 Cal.3d 644, 648 (1989) and *Fletcher v. W. Nat. Life Ins. Co.*, 10 Cal.App.3d 376, 397 (1970)). The range of mental or emotional injury subsumed within the rubric "emotional distress . . . includes fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity, as well as physical pain." *Thing*, 48 Cal.3d at 648–49.

Direct evidence of emotional distress is not required; however, the Court may infer that the emotional distress exists based on evidence of harassment combined with a sworn statement by the person seeking the injunction that they have experienced emotional distress. *See Ensworth v. Mullvain*, 224 Cal.App.3d 1105, 1110-11 (1990); *see also Harris v. Stampolis*, 248 Cal.App.4th 484, 502 (2016) (anxiety diagnosis sufficient element of emotional distress); *Brekke*, 125 Cal.App.4th at 1415 (intense language, such as referring to a person's daughter as a "psychotic f***ing whore" who should "keep f***ing yourself in the ass" together with concocted scenarios where plaintiff would be harmed sufficient evidence of emotional distress).

Any reasonable person being publically bombarded with foul language, recriminations, threats, and accusations of criminal conduct would find such messages emotionally disturbing. And Plaintiff has. Plaintiff has suffered anxiety, indignation, and embarrassment as the result of Defendant's actions. Principe Decl. ¶¶ 23-25. Plaintiff has

10

also lost employment opportunities and income as a result of Defendant's conduct, and he worries about the impact those actions will have on his ability to obtain gainful employment in the future. Principe Decl. ¶¶ 15, 25. This element is therefore satisfied.

### 3. Defendant's acts are not constitutionally protected.

"Constitutionally protected activity is not included within the meaning of 'course of conduct.'" Cal. Civ. Proc. Code § 527.6(b)(1). California courts have explained the level of constitutional protection afforded acts such as those at issue here:

> The United States Supreme Court has long recognized that not all speech is of equal First Amendment importance. It is speech on matters of public concern that is at the heart of the First Amendment's protection.... In contrast, speech on matters of purely private concern—while not totally unprotected—is of less First Amendment concern. When such speech—for example, as in ***defamation or the intentional infliction of emotional distress***—causes damage, civil sanctions may be imposed because [t]here is no threat to the free and robust debate of public issues; there is no potential interference with a meaningful dialogue of ideas concerning self-government; and there is no threat of liability causing a reaction of self-censorship by the press....

*Brekke*, 125 Cal.App.4th at 1409 (quoting *Dun & Bradstreet v. Greenmoss Builders*, 472 U.S. 749, 758-61 (1985)) (emphasis added; citations and quotation marks omitted).

Thus, "there are categories of communication and certain special utterances to which the majestic protection of the First Amendment does not extend because they are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." *Balboa Island Village Inn, Inc. v. Lemen*, 40 Cal. 4th 1141, 1147 (2007).

California courts have therefore held that defamatory statements, including accusations of civil and criminal fraud, as well as threats, are not protected. *See Parisi v.*

*Mazzaferro*, 5 Cal.App.5th 574, 584-85 (2016); *see also Lemen*, 40 Cal. 4th at 1153 (determining vocal criticism of neighbor not protected speech). Speech that constitutes "harassment" within the meaning of section 527.6 is not constitutionally protected, and the victim of the harassment may obtain injunctive relief. *Huntingdon Life Scis., Inc. v. Stop Huntingdon Animal Cruelty USA, Inc.*, 129 Cal.App.4th 1228, 1250 (2005).

Simply put, Defendant's saying that "you are a STUPID MOTHERF****R for f***ing with me, you piece of sh**" and similar comments are adding nothing to any debate about any matter of public importance. Defendant is not a public figure. Princnipe Decl. ¶ 26. Defendant is harassing Plaintiff, and he cannot hide behind the Constitution to do so.

### 4. Defendant will continue his harassing conduct absent an injunction.

Defendant's conduct has continued for months unabated, and each time his LinkedIn connection request is either rejected or expires, he send another one together with a vitriolic, harassing message. Defendant has also continued his harassment on social media unabated and recently began contacting Plaintiff directly on his phone via the WhatsApp application. It is evident that Defendant is increasing his level of harassment as more time passes. Absent an injunction, there is no indication, or reason, for Defendant to cease his conduct. An injunction is therefore appropriate. *See R.D. v. P.M.* (2011) 202 Cal.App.4th 181, 190 (restraining order is intended to prevent future harassment and not punish past harassment).

### B. Plaintiff will suffer irreparable harm if an injunction is not issued.

California's anti-harassment statute specifically contemplates that irreparable harm may flow from harassment. *See generally* Cal. Civ. Proc. Code § 527.6. And courts have recognized in other contexts that harassment or emotional distress may cause irreparable harm. *See Denney v. DEA*, 508 F. Supp. 815 (E.D. Cal. 2007) (rejecting argument that emotional distress from investigation did not constitute irreparable harm because damages could not assure plaintiff that similar investigative tactics would not be used in

12

the future); *Sullivan v. Cohen*, No. B272111, 2017 WL 4296586, at *1 (Cal. Ct. App. Sept. 28, 2017) (affirming restraining order based on harassment because irreparable harm would flow if conduct causing substantial emotional distress did not cease). Moreover, California courts have entered injunctions against harassment in situations similar to those here, thus indicating that any irreparable harm requirement is satisfied by the type of conduct at issue here. *See, e.g,. Parisi*, 5 Cal.App.5th at 1223-24 (letters and other communications calling victim "scum of the earth filth who preys on the elderly" together with accusations of falsifying a trust and property deeds, embezzling federal housing funds, of facilitating annuity schemes, setting up false bank accounts, committing bankruptcy fraud, and making false police reports all found to be part of a harassing course of conduct resulting in injunction).

And this makes sense. Ongoing harassment leads to continued emotional distress, and damages cannot later undo the anxiety, pain, and suffering resulting from the ongoing conduct. Only an injunction can cause this harm to stop.

**C.     The balance of equities favors Plaintiff.**

Here, if the injunction against harassment is not issued, Plaintiff will continue to suffer emotional distress, humiliation, and terrible anxiety. On the contrary, if it is issued, Defendant will simply be prevented from inflicting such harm on Plaintiff. Defendant would still be able to express his personal views in a non-harassing, professional manner. As a result, this factor favors Plaintiff.

**D.     The public interest favors an injunction.**

"Section 527.6 was enacted 'to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California Constitution.' It does so by providing expedited injunctive relief to victims of harassment." *Brekke*, 125 Cal.App.4th at 1412 (citations omitted). The right to live one's life free from harassment is enshrined in the California Constitution. The public interest is favored by upholding the Constitution and its aims, and an injunction preventing future harassment is therefore in the public interest.

13

## IV. CONCLUSION

No reasonable person should have to tolerate the daily harassment from Defendant. An injunction in the form of a restraining order against harassment is necessary.

DATED: October 20, 2017          Tucker Ellis LLP

By:  /s/Steven E. Lauridsen
     Howard A. Kroll
     Steven E. Lauridsen

     Attorneys for Plaintiff
     CHRIS PRINCIPE

14

1297734.3