TUCKER ELLIS LLP
Howard A. Kroll - SBN 100981
howard.kroll@tuckerellis.com
Steven E. Lauridsen – SBN 246364
steven.lauridsen@tuckerellis.com
515 South Flower Street
Forty-Second Floor
Los Angeles, CA 90071-2223
Telephone:   213.430.3400
Facsimile:   213.430.3409

Attorneys for Plaintiff
CHRIS PRINCIPE

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRIS PRINCIPE,<br><br>        Plaintiff,<br><br>   v.<br><br>TIMOTHY GLEN CURRY A/K/A TIMOTHY TAYSHUN,<br><br>        Defendant. | Case No. 8:17-cv-00608 JLS (KESx)<br><br>**DECLARATION OF CHRIS PRINCIPE IN SUPPORT MOTION FOR PRELIMINARY INJUNCTION ORDER AGAINST HARASSMENT**<br><br>DATE:    December 1, 2017<br>TIME:    2:30 p.m.<br>CTRM:   10A<br><br>Hon. Josephine L. Staton |

I, Chris Principe, declare as follow:

1. I am the Plaintiff in this action. I make this declaration of my personal knowledge and, if called as a witness, could testify competently to each of the following facts.

2. I am a consultant in transaction banking, finance and technology. My career as a consultant also focuses on global trade using cryptocurrency and blockchain. Cryptocurrencies, such as BitCoin, are digital currencies in which encryption techniques are used to regulate the generation of units of currency and verify the transfer of funds, operating independently of a central bank. Blockchain is a digital ledger in which transactions made in cryptocurrency are recorded chronologically and publicly

3. In furtherance of my consulting business, I have given numerous speeches and presentations, as well as trainings and workshops, throughout the world. I have written over thirty published articles in the transaction banking, finance and technology arena. I am the official Trade Finance Trainer for the certificate program of Florida International University and Florida International Banking Association (FIBA) since 2012.

4. I was Chairman of the Banker's Association for Finance and Trade (BAFTA) and the International Financial Services Association (IFSA) National Trade Services Product Management Committee from January 2009 to December 2013. I was the first non-banker voted as the Chairman of this committee. I was also the Founding Chairman of the IFSA Financial Supply Chain Committee in February 2008. Further, I am an owner and publisher of Financial IT, an online and print resource for Financial Technology market analysis.

5. I have enjoyed a good reputation both generally and in my occupation. My clients have highly recommended me to others and have referred to me as, among other things, "a real expert in trade finance and supply chain," "one of the most visionary Trade Finance and Financial Supply Chain executives in the space," and "a diligent and highly experienced worker."

6. My understanding is that Defendant is the President and co-founder of the now defunct ezCoinAccess, which seeks to make BitCoin accessible and available to everyone throughout the world. Defendant claims to operate BitCoin kiosks, which act like cryptocurrency ATMs, in furtherance of his investment in the BitCoin cryptocurrency. Defendant supports BitCoin by, among other things, attacking competitors of BitCoin, like OneCoin, over the Internet and on social media. Defendant uses the Twitter handle @ezCoinAccess to make such attacks. Defendant also frequently comments on the BehindMLM blog posts accessible at behindmlm.com, where he also makes these attacks.

7. BehindMLM is a blog or review site on the Internet dedicated to being a resource to people curious about the multi-level marketing (i.e. MLM) industry and the companies that exist within it.

8. In February 2016, Financial IT featured a photograph of Ruja Ignatova on its cover and in an article about OneCoin, a cryptocurrency promoted by Ms. Ignatova and her company, Onecoin Ltd., and which is a competitor to BitCoin. Neither Ms. Ignatova nor OneCoin Ltd. paid me or Financial IT for that cover and article. I also gave a speech in June 2016 about the uses and benefits of cryptocurrencies in global trade at an event hosted by OneCoin Ltd. in London, England. I was not paid for that speech by Ms. Ignatova or OneCoin Ltd. In fact, neither Ms. Ignatova nor OneCoin Ltd. has ever paid me or Financial IT for any publication, speech, or support, nor am I an employee of OneCoin Ltd. or a paid sponsor or representative of OneCoin Ltd.

9. Defendant consistently refers to OneCoin as a Ponzi scheme and a criminal enterprise in his Tweets and posts on the Internet. Defendant has done so daily or near-daily and at a high volume. In many of Defendant's Tweets and posts, Defendant has falsely claimed, and without any evidence, that I have engaged in criminal activity by being paid by, and working to support, OneCoin Ltd.

10. Defendant has sought to destroy my consulting business and publishing business by sending Tweets to my Twitter handle @cmpleo and Financial IT's Twitter

handle @financialit_net to ensure that followers of my and Financial IT's Twitter feeds would see Defendant's false and defamatory Tweets.

11. Defendant has also used a series of hashtags in his Tweets to further more broadly disseminate his false statements. For instance, Defendant uses hashtags such as "#onecoin" and "#ponzi" to tie Defendant's defamatory Tweets to other Tweets using the same hashtags.

12. Many of Defendant's harassing Tweets concerning me are posted within days of each other or even on the same day, sometimes in rapid succession. Some Examples include:

- "@cmpleo . . . @financialit_net . . . Chris Principe pimps #ponzi#Onecoin.";
- "@cmpleo . . . @financialit_net Chris Principe is a PAID SHILL for #Onecoin #ponzischeme.";
- "@cmpleo . . . @financialit_net . . . WHY IS Chris Principe touring/shilling known #ponzischeme #Onecoin.";
- "@cmpleo . . . @financialit_net Chris Principe on #Onecoin #ponzi payroll #PaidShill.";
- ". . . @cmpleo @financilit_net . . . The Publisher, Chris Principe @cmpleo is on #Onecoin #ponzi payroll!";
- "@cmpleo . . . WHY IS Chris Principe PROMOTING A KNOWN #PONZI #Onecoin."; and
- ". . . @cmpleo . . . WHY Is Chris Principe promoting a KNOWN and INFAMOUS #ponzischeme?"

13. At least one of my business deals has been destroyed as a result of this activity. In June 2016, I first met with members of the management team of Skyway Capital ("Skyway") who were interested in the combination of a future mode of transportation with financing through crowd funding. In September 2016, Skyway asked me if I would be interviewed for Belarus television about my opinions of Skyway and what I thought Skyway's impact would be on the future of transportation. I was not paid

4

for this interview. Skyway and I entered into a representative's agreement in September 2016. Pursuant to this agreement, I would provide Skyway with access to my network of contacts in banking, government and industry.

14. Due to Skyway's relationship with me, Skyway was also identified as a Ponzi scheme by BehindMLM and Defendant. Skyway did not want to be associated with me because of the adverse effect it would have on Skyway's business, reputation, and ability to find investors. Skyway canceled its agreement with me in 2017 because Skyway found statements by Defendant on the Internet falsely linking me directly as a promoter of a Ponzi scheme and Skyway therefore did not want to be associated with me.

15. The financial industry in which I operate is risk adverse, and I have lost this and other business opportunities as a result of Defendant's harassing conduct. As a result, in addition to the inherently harassing nature of Defendant's activity, my ability to earn a living is being damaged by the harassment. This impairment to my ability to earn a living is further compounding my emotional distress.

16. After this action commenced, Defendant sent me a request to connect with him on the social networking site LinkedIn. The request was accompanied by a message: "I'm going to help put you in jail . . . In my opinion, you are a STUPID MOTHERF****R for f***ing with me, you piece of sh**. [W]ait for it!"[1] I have declined or ignored these requests. However, whenever I decline them, Defendant sends another request with another harassing message. Similarly, when I ignore them, they expire after thirty days, at which point, Defendant sends a new one. A copy of one such message is attached as Exhibit 1.

17. In addition to sending messages on LinkedIn, Defendant has been tagging me in a barrage of harassing Tweets. For instance, on September 8, 2017, Defendant sent me Tweets at 4:05 a.m., 4:07 a.m., 4:10 a.m., and 5:29 a.m., to name a few. On September 18, 2017, Defendant sent Tweets at least at 2:27 a.m., 9:02 a.m., 9:12 a.m., 9:16 a.m., 9:22 a.m., and 9:43 a.m. On September 19, 2017, Defendant again unleashed a

---

[1] In this declaration, certain phrases of Defendant are redacted or partially redacted due to their offensive nature.

series of Tweets, and on September 20, 2017, Defendant Tweeted at me at least at 7:09 p.m., 7:29 p.m., and 7:35 p.m. The language in these Tweets is highly offensive. A compilation of offensive Tweets and social media postings, most of which are date and time stamped, are attached as Exhibit 2. Some of the Tweets I have received include the following:

- "U attack ME for EXPOSING UR ASS??? I won't stop EXPOSING YOUR ASS until UR in JAIL";
- "Tell your attorney, Howard Kroll, I'm calling you an accomplice to PONZI, ON THE RECORD!";
- "FEDS! Follow ALL DRAMA by searching 'Chris Principe' on this site [website]";
- "HEY FEDS!!! FOLLOW THE WIRE FRAUD AND MONEY LAUNDERING TRAIL!";
- "U guys must already have SEVERAL of these intl economic criminal in your Watch list.";
- "FOLLOW THIS THREAD TO FIND ECONOMIC CRIME. PLEASE TAKE ACTION.";
- "That's correct I have dates n which Principe met w/ OTHER OC scammers to fund his case";
- "Chris Principe appears 2B a serial scam opportunist who'll enable Money Laundering opportunities to infamous criminals";
- "You're going down too, scammer. Enjoy while you can.";
- "I WILL B TESTIFYING AGAINST U N FEDERAL COURT WHEREIN U R THE DEFENDANT & THE SEC IS THE PLAINTIFF U A**HOLE! WASTE MY TIME!? F-YOU!";
- "Better seek a new career, because this industry DOESN'T WANT YOU SCAMMERS!"; and
- "Scammers get kicked out of 'blockchain events.' Sorry Chris Principe, you

6

scamming pieced shit! Someone figured you out!"

18. Defendant has been copying various organizations, ranging from professional organizations to the FBI and SEC with his Tweets.

19. These are but examples of the near-daily barrage of messages, which are taking up a significant amount of my time to sort through to reach legitimate messages.

20. I have been using Twitter since 2009 and therefore enjoy a wide following.

21. As a result, Defendant's harassing messages are being disseminated to a broad audience. Defendant has also begun posting images of me and bragging about how I have been un-invited from events due to Defendant's comments and postings. In addition to the emotional distress caused by the original postings and the loss of these engagements, I am experiencing additional emotional distress as a result of Defendant's subsequent posting bragging about these results. My specific symptoms of emotional distress are discussed further below.

22. Defendant has begun using the mobile phone messenger application WhatsApp to broaden his efforts to bombard me with harassing messages on my mobile phone. As an example, Defendant has added me to a group chat message titled "OneCoin Victim Support." Defendant is barraging me with messages at all hours, including the early morning and the middle of the night and is encouraging the 160 other people he has added to the group chat to do so as well. These messages contain the same type of untruthful and vile allegations and comments contain in the Twitter posts. Transcriptions of some of these messages are attached as Exhibit 3.

23. This conduct has caused me extreme emotional distress. Specifically, I am experiencing anxiety, depression, and agitation from these activities. I have been losing sleep, both because of the timing of the messages and because of the impact they are having on both my emotional state and my professional career. I have also experienced shortness of breath. I have not yet sought professional help to cope with Defendant's conduct, but I do not feel that doing so will be productive if his conduct remains ongoing.

24. When Defendant brags about the impact he is having, it only serves to

redouble my anxiety. His pleasure in my pain troubles me deeply and makes me believe he will not stop his conduct unless he is forced to do so. I also worry about my ability to acquire gainful employment in the future, particularly given that Defendant's conduct has impacted my current employment opportunities.

25. Defendant's efforts to cause third parties to "pile on" only serves to increase my anxiety and distress. The longer Defendant continues with this activity, there is a better chance that it will gain continued momentum beyond Defendant, a concern which causes me immense stress.

26. I am not a public figure in that I do not hold any public office.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that this declaration was executed on October 20, 2017 in Toronto, Canada.

CHRIS PRINCIPE